**CT Corporation**

**Service of Process Transmittal**
11/05/2020
CT Log Number 538543459

| | |
|---|---|
| **TO:** | Attn: Legal SOP Meijer<br>Meijer, Inc.<br>2929 Walker Ave NW<br>Grand Rapids, MI 49544-6402 |
| **RE:** | **Process Served in Michigan** |
| **FOR:** | Meijer, Inc.  (Domestic State: MI) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Pro Music Rights, LLC, Pltf. vs. Meijer Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibits |
| **COURT/AGENCY:** | COLLIER COUNTY COURT, FL<br>Case # 112020CA0031920001XX |
| **NATURE OF ACTION:** | Breach of Contract |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Plymouth, MI |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/05/2020 at 16:24 |
| **JURISDICTION SERVED :** | Michigan |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service of this summons on that defendant, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Jimmie D. Bailey III<br>3811 Airport Pulling Road, Ste. 203<br>Naples, FL 34105<br>850-826-0917 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/05/2020, Expected Purge Date: 11/10/2020<br><br>Image SOP<br><br>Email Notification,  Attn: Legal SOP Meijer  LegalSOP@meijer.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Company<br>1209 N Orange St<br>Wilmington, DE 19801-1120 |
| **For Questions:** | 866-401-8252<br>EastTeam2@wolterskluwer.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# IN THE COUNTY COURT FOR THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR COLLIER COUNTY, FLORIDA

**Pro Music Rights, LLC,**
    **Plaintiff,**

**vs.**
                                        **CASE NO.: 11-2020-CA-003192-0001-XX**

**Meijer Inc.,**
    **Defendant.**

_____/

## SUMMONS

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on defendant:

THE CORPORATION COMPANY
40600 ANN ARBOR RD E STE 201
PLYMOUTH, MI  48170

Each defendant is required to serve written defenses to the complaint or petition on Colosseum Counsel, PLLC., plaintiff's attorney, whose address is 3811 Airport Pulling Road, Ste. 203, Naples, Florida 34105, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on this __21__ day of October 2020.

_____
As Clerk of the Court

By: _Deanna Hackler_
As Deputy Clerk



## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (which can be found online or in the phone book).

**IN THE COUNTY COURT FOR THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR COLLIER COUNTY, FLORIDA**

Pro Music Rights, LLC,
    **Plaintiff,**

vs.                             **CASE NO.:** _____

Meijer Inc.,
    **Defendant.**

_____/

## PLAINTIFF'S COMPLAINT

COMES NOW, Plaintiff, PRO MUSIC RIGHTS, LLC, by and through the undersigned attorney, sues defendants, MEIJER INC., and alleges the following:

### GENERAL ALLEGATIONS

1. This is an action for damages that exceed $30,000, exclusive of all interest, costs, and attorney's fees.

2. Venue is proper in the 20th Judicial Circuit Court, because, at all relevant times, the Plaintiff was a registered company of the State of Florida, and all the acts, having transpired, giving rise to this complaint, occurred within Collier County.

3. At all times material hereto, Plaintiff, PRO MUSIC RIGHTS, LLC, is a limited liability company, incorporated in the State of Florida, duly formed and operating under the laws of the State of Florida, with a principal place of business located at 3811 Airport Pulling Rd. Ste. 203, Naples, Collier County, Florida 34105 (hereinafter referred to as the "Plaintiff").

4. At all times material hereto, the Defendant, MEIJER INC., is a foreign corporation, incorporated in the State of Michigan, duly formed and operating under the laws of the

State of Michigan, with a principal place of business located at 2929 Walker, N.W.,

Grand Rapids, Michigan 49544 (hereinafter referred to as the "Defendant").

5. This Court has jurisdiction and venue is proper because Plaintiff is operating its primary

place of business in Collier County, Florida, and because the causes of action accrued in

Collier County, Florida.

## FACTS COMMON TO ALL COUNTS

6. On or about the 18th day of June 2020, Plaintiff and Defendant entered into a written

Business License Agreement (hereafter referred to as the "Contract") in which both

parties agreed the Defendant would be provided a non-exclusive license to perform

publicly, or cause the public performance, of non-dramatic musical compositions within

the repertory of the Plaintiff, for the Defendant's principle office and for the two-hundred

and fifty-six (256) other business locations controlled and operated by the Defendant, in

exchange for a payment of fifty dollars ($50.00) per month, per each business location,

and further agreed to report all music usages, late fees, late reporting fees, yearly

increases. which the Defendant owed to the Plaintiff on the first of each month. Please

refer to the attached Contract, marked as "Exhibit A" to this complaint, and is

incorporated by reference.

7. At the time the Contract was executed, Joshua Robinson, a "Team Leader" and an agent

of the Defendant's company (hereafter referred to as "Defendant's Agent"), was acting

on behalf, and in the interest, of the Defendant and the Defendant's business.

8. The Contract provided the Defendant with a non-exclusive license to publicly use or

perform copyrighted musical compositions owned, maintained, and included in the

Plaintiff's repertory, on premises of each of the Defendant's business locations, effective
on June 18, 2020, for a period of five (5) years.

9.  In entering into the Contract with the Plaintiff, the Defendant's Agent manually inputted
    payment information, using the Defendant's credit card information, and authorized
    payments using the provided payment method.

10. In entering into the Contract with the Plaintiff, the Defendant's Agent was required to
    manually and voluntarily placing a check mark in a box representing and confirming that
    he was (1) at least 18 years of age, (2) read and understood the terms of the Contract, and
    (3) on behalf of the Defendant, agreed to be bound by the terms of the Contract. Please
    refer to the attached confirmation page, which can be found on the Plaintiff's website,
    marked as "Exhibit B" to this complaint, and is incorporated by reference.

11. In entering into the Contract with the Plaintiff, the Defendant's Agent was required to
    manually and voluntarily placing a check mark in an additional box representing and
    confirming that he (1) understood they were entering into a Contract with the Plaintiff,
    (2) read and understood all the information provided in the Contract, (3) understood that
    affixing an electronic signature to the Contract would be considered the same as a
    handwritten signature for the purposes of establishing a valid and enforceable contract,
    and (4) said electronic signature was admissible.

12. Before manually and voluntarily clicking on the link titled "create new account,"
    Defendant's Agent read the following sentence, stating "Licensee understands that they
    are taking a license pursuant to the above contract of at least Fifty dollars per location,
    plus taxes, processing fees and yearly increases, which will be assessed each month and
    automatically charged."

13. Before manually and voluntarily clicking on the link titled "create new account," Defendant's Agent read the following sentence, stating, "This contract has a minimum of five business locations, in the event that you wish to obtain a licensing agreement with less business locations, please contact licensing@promusicrights.com to assist you with this and do not continue further."

14. Before manually and voluntarily clicking on the link titled "create new account," Defendant's Agent read knew, in executing the Contract, the Plaintiff expected full and complete compliance with the terms of the Contract, which included "payment of the outstanding balance and the payment of ongoing license fees over the initial five-year term."

15. At the time the Contract was executed, the Plaintiff justifiably and reasonably relied on the apparent authority of the Defendant's Agent to obligate the Defendant to perform under the terms of the Contract to the Plaintiff's detriment.

**FIRST CAUSE OF ACTION**
**Order Establishing the Creation and Existence of a Valid and Enforceable Contract Between the Plaintiff and the Defendant**

16. Plaintiff incorporates paragraphs 1 through 15.

17. A justiciable controversy exists between the Plaintiff and the Defendant as to the status and effect of the Contract and of the Parties' respective rights and obligations under the Contract.

**WHEREFORE**, the Plaintiff seeks an order declaring the following: (1) a valid and enforceable contract exists between the Plaintiff and the Defendant, which both parties are legally bound and obligated to perform under the terms of the Contract; (2) the Plaintiff is entitled to receive payment in-full of all amounts, current, future, and outstanding, pursuant to

the terms of the Contract from the Defendant; and (3) the Defendant is obligated to continue to

perform under the terms of the Contract for the remainder of the contract period. Plaintiff prays

that the relief sought in this declaratory judgment action be granted, for the reasons cited above,

and that the Plaintiff be awarded the costs and attorney's fees they have incurred in seeking to

enforce this Contract, and that the Plaintiff be granted such other and further relief in the

declaration of rights and legal obligations of the parties to this action as the Court may deem just,

proper and equitable.

## SECOND CAUSE OF ACTION
### Breach of Contract

18. Plaintiffs repeat paragraphs 1 through 15 as if fully set forth herein.

19. Plaintiff has performed all the conditions, covenants, promises, and agreements required
    of them under the terms of the Contract.

20. With the exception of two payments made to the Plaintiff on June 18, 2020, the
    Defendant has failed and refuses to acknowledge their duty and obligation to continue to
    perform conditions, covenants, promises, and agreements required of them under the
    terms of the Contract.

21. The Defendant's failure to continue to pay the amount it knew it owed the Plaintiff under
    the Contract constitutes a breach of the Contract and Florida law.

22. Because of Defendant's failure to perform their obligations under the Contract, Plaintiff
    has been damaged in the sum of $6,264,138.03, which is the remaining value of the
    contract that has not been paid.

23. Plaintiff has repeatedly requested that the Defendant pay the amounts owed under the
    Contract the Defendant has repeatedly refused, and continues to refuse, to pay the full
    damages despite knowing payment is required under the Contract and Florida law.

24. Plaintiff has suffered a substantial loss regarding its copyrighted property and continues to suffer the loss, and the Defendant's failure to comply with its contractual obligations has damaged Plaintiff monetarily.

25. As a direct and foreseeable result of Defendant's breach of contract, Plaintiff has:

   a.  suffered and will continue to suffer significant damage to Plaintiff's property;

   b.  suffered and will continue to suffer consequential damages due to Defendant's delay and failure to timely pay for the use of Plaintiff's property; and

   c.  incurred and will continue to incur attorneys' fees, litigation costs, and all other losses including pre-judgment interest.

   **WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Defendant, MEIJER INC., for monetary damages, including, but not limited to, the Plaintiff's incidental and consequential damages, Plaintiffs attorneys' fees, costs, and all other remedies this Court may deem just and proper.

## THIRD CAUSE OF ACTION
### Negligent Misrepresentation

26. Plaintiffs repeat paragraphs 1 through 15 as if fully set forth herein.

27. In order to induce the Plaintiff to provide the Defendant with a license to publicly use or perform copyrighted musical compositions owned, maintained, and included in the Plaintiff's repertory, the Defendant misrepresented, through the acts of the Defendant's Agent, that in exchange for said license, the Defendant would pay a fair value of the benefits they received.

28. Defendant also promised to pay fifty dollars ($50.00) per month, per each business location, which the Defendant owned and operated, to the Plaintiff on the first of each

month, agreed to report all music usages, and agreed to be subject to all late fees, late reporting fees, yearly increases.

29. In full and complete reliance upon Defendant's misrepresentations set forth above, Plaintiff agreed to enter into the Contract and provide the Defendant with a license to publicly use or perform copyrighted musical compositions owned, maintained, and included in the Plaintiff's repertory.

30. The representations set forth above as made by Defendant were false.

31. Defendant, in the exercise of reasonable care under the circumstances, should have known that her statements were false.

32. In making the false statements, Defendant intended that Plaintiff rely upon the false statements.

33. Plaintiff reasonably relied on Defendant's false statements.

34. In contravention of her promises, Defendant has not paid the Plaintiff fifty dollars ($50.00) per month, per each of the two-hundred and fifty-six (256) business locations, which does not include the location Defendant's principle office, controlled and operated by the Defendant, on the first of each month.

35. As a direct and proximate of Defendant's false statements, Plaintiff has suffered losses and damages in that Plaintiff has lost profits and profitability, and has suffered other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, MEIJER INC., for compensatory damages, including, but not limited to, lost profits and profitability, costs, interest and such other relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment

36. Plaintiffs repeat paragraphs 1 through 15 as if fully set forth herein.

37. If no contract exists between the Plaintiff and Defendant, the Plaintiff alleges, in the
alternative to its breach of contract claim, the Plaintiff is entitled to recover under
promissory estoppel if it is determined that an enforceable contract does not exist, the
existing contract does not cover the subject matter of the dispute between Plaintiff and
Defendant, Plaintiff performed services that were outside of or over and above those
contemplated by the existing contract, or the existing contract is void.

38. Defendant, without Plaintiff's consent, obtained and used Plaintiff's copyrighted musical
compositions within its repertory, for the Defendant's principle office and for the two-
hundred and fifty-six (256) other business locations controlled and operated by the
Defendant, for Defendant's own trade purposes.

39. A substantial benefit was conferred upon Defendant through its unauthorized use of the
Plaintiff's copyrighted property.

40. Defendant procured, and knowingly and voluntarily sought the benefit of the use of
Plaintiff's copyrighted musical compositions under circumstances in which it would be
inequitable for Defendant to retain the benefit without paying the value thereof. The fair
value of the benefits received from Defendant's use of Plaintiff's musical compositions is
determined by the terms of the Contract.

41. In pursuit of damages resulting from Defendant being unjustly enriched by obtaining and
using the Plaintiff's the copyrighted musical compositions, Plaintiff has been damaged
and seeks recovery for unjust enrichment as a direct and proximate result of Defendant's
conduct.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Defendant, MEIJER INC., for monetary damages, including, but not limited to, the Plaintiff's incidental and consequential damages, Plaintiffs attorneys' fees, costs, and all other remedies this Court may deem just and proper.

## FIFTH CAUSE OF ACTION
### Promissory Estoppel

42. Plaintiffs repeat paragraphs 1 through 15 as if fully set forth herein.

43. If no contract exists between the Plaintiff and Defendant, the Plaintiff alleges, in the alternative to its breach of contract claim, that Plaintiff is entitled to recover by estoppel if it is determined that either a valid and enforceable contract does not exist, the existing contract does not cover the subject matter of the dispute between Plaintiff and Defendant, Plaintiff performed services that were outside of or over and above those contemplated by the existing contract, or the existing contract is void.

44. On or about the 18th day of June 2020, Defendant made an unambiguous, definite, and substantial written promises to Plaintiff.

45. Since the above mentioned date, Defendant was in a position to fully perform, fulfill, and carry out the terms and conditions of the promises it made to Plaintiff, because the Defendant possess the financial means to provide Plaintiff with the payments owed for obtaining a license to publicly use copyrighted musical compositions owned, maintained, and included in the Plaintiff's repertory, for each of the specified business locations owned and operated by the Defendant, on the first of each month.

46. It was foreseeable that Defendant's promises would cause or induce Plaintiff to act in reasonable reliance on Defendant's promises.

47. In reliance on Defendant's promises, Plaintiff agreed to enter into the Contract and provide the Defendant with a license to publicly use or perform copyrighted musical compositions owned, maintained, and included in the Plaintiff's repertory.

48. Injustice can be avoided only by enforcement of the Defendant's promises.

49. As a direct and proximate of Defendant's false statements, Plaintiff has suffered losses and damages in that Plaintiff has lost profits and profitability, and has suffered other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant, MEIJER INC, for Plaintiff's damages, including, but not limited to, for compensatory and monetary damages, incidental and consequential damages, attorneys' fees, costs, interests, and all other remedies this Court may deem just and proper.

### SIXTH CAUSE OF ACTION
### Quantum Meruit

50. Plaintiffs repeat paragraphs 1 through 15 as if fully set forth herein.

51. If no contract exists between the Plaintiff and Defendant, the Plaintiff alleges, in the alternative to its breach of contract claim, that Plaintiff is entitled to recover in quantum meruit if it is determined that either a valid and enforceable contract does not exist, the existing contract does not cover the subject matter of the dispute between Plaintiff and Defendant, Plaintiff performed services that were outside of or over and above those contemplated by the existing contract, or the existing contract is void.

52. On or about the 18th day of June 2020, Plaintiff conferred a benefit on Defendant by providing the Defendant with a license to publicly use or perform copyrighted musical compositions owned, maintained, and included in the Plaintiff's repertory.

53. Defendant assented to the benefit conferred on Defendant by Plaintiff.

54. Defendant knew that Plaintiff was not providing the Defendant with a license to publicly use or perform copyrighted musical compositions owned, maintained, and included in the Plaintiff's repertory the gratuitously.

55. Defendant knew that Plaintiff reasonably expected to be paid for providing the Defendant with a license to publicly use or perform copyrighted musical compositions owned, maintained, and included in the Plaintiff's repertory.

56. On the 18th day of June 2020, Plaintiff provided the Defendant with a license to publicly use or perform copyrighted musical compositions owned, maintained, and included in the Plaintiff's repertory, and sent an invoice to the Defendant to pay Plaintiff for the reasonable value of the licenses provided, as evidenced by Exhibit A, which is hereby incorporated by reference.

57. Defendant has not paid Plaintiff for the reasonable value of the licenses provided.

58. As a result of Defendant's failure, and refusal, to pay Plaintiff for the reasonable value of the licenses provided, Plaintiff has suffered monetary losses in the amount of $6,264,138.03, plus interest, costs, and expenses.

**WHEREFORE**, Plaintiff demands judgment against Defendant, MEIJER INC., for the reasonable value of the licenses provided in an amount to be determined at trial, plus attorney's fees, costs, interests, and all other remedies this Court may deem just and proper.

Respectfully submitted,

Dated: October 5, 2020

**/s/ Jimmie D. Bailey III, Esq.**
Jimmie D. Bailey III, Esq.
*Attorney for Plaintiff*
Bar No.: 1017733
3811 Airport Pulling Road, Ste. 203
Naples, Florida 34105
Tele: (850) 826-0917
E-mail: jimmie@fightforme.com

# Exhibit A

**BUSINESS LICENSE AGREEMENT**

Agreement made and entered into this 18 of June, 2020 (the "Effective Date"), by and between  the PRO MUSIC RIGHTS, LLC, with its principal offices located at 3811 Airport Pulling Rd. Ste. 203, Naples, Florida 34105, hereinafter referred to as "PRO", and

Meijer, a business with its principal offices located at
3320 W Shore Dr Holland MI

hereinafter referred to as "Licensee". WITNESSETH:
        WHEREAS, PRO's writer and publisher clients have authorized PRO to license, on a non-exclusive  basis, non-dramatic public performances of their copyrighted musical compositions; and
        WHEREAS, Licensee is a business and desires to perform publicly and non-dramatically  the copyrighted musical compositions in PRO's repertory during the period hereof.

Now, therefore, the parties hereto mutually agree as follows:

**1.        Definitions**

As used in this Agreement,
(a)        The term "Licensee" shall include the named institution and any of its constituent bodies, agencies or  organizations.
(b)        The term "business location" shall include Licensee's places of business and any site located off Licensee's primary principal office which has  been engaged by Licensee for use by Licensee and any of its constituent bodies, agencies or organizations. Each business location must be reported as detailed below and a minimum base licensing fee shall apply. Examples of separate business locations are, but not limited to, each airplane, mobile app, website, franchisee, subsidiary, television station, cable provider, and cable television station.
(c)        The term "musical attractions" shall mean concerts, shows, recitals, dances and other similar performances.
(d)        "Internet Transmissions" shall mean all transmissions of content to Users from or through Licensee's Internet Site   or Service, or from any other Internet site or service pursuant to an agreement between Licensee and the operator of the  other Internet site or service, when accessed by means of any connection from Licensee's Internet Site or Service.
(e)        "Locally Originated Programming" shall mean television programming produced or which is inserted locally by  Licensee or through an interconnect (an association of two or more cable systems for the purpose of distributing  advertising or programming simultaneously) or otherwise originating by or on "Licensee's Cable Television System"  including, without limitation, (i) programming on locally-originated channels, including advertising and promotional  materials thereon; (ii) programming on public, educational and governmental ("PEG") access channels; (iii) public service announcements; (iv) programming on leased access channels; and (v) advertising and promotional materials inserted  locally or through an interconnect by or on behalf of Licensee into national, regional or local cable programming services.
(f)        "Licensee's Cable Television System" shall mean a cable television system, system of closed circuit distribution,  MMDS, internet, broadband, including any linear feed via the Internet, broadband or other online service or other means  of distribution which is owned and operated by Licensee and by which Licensee transmits Locally Originated  Programming on Licensee's place of business, except that it shall not include free over-the-air broadcast television.
(g)        "Intranet Transmissions" shall mean transmissions that can only be accessed through an internal computer  network accessible only to faculty, staff, students, and other members of the business community who authenticate  themselves through a secure access system.
(h)        "Radio Station" shall mean a radio station licensed for non-commercial educational broadcasting that is not  qualified under the rules of the Corporation for Public Broadcasting for receipt of community service grants.
(i)        "Users" means all those who access Internet Transmissions.
(j)        "PRO Repertory" means all copyrighted Musical Works (a) written and/or published by PRO Clients and (b) for which PRO controls, whether as of the Effective Date or any time during the Term, the non-dramatic public performance rights in the Territory, but solely to the extent such rights are or may during the Term be vested in or assigned to PRO by PRO Clients.
(k)        "Musical Work" means any copyrightable musical composition, including any lyrics or words written to be used with such composition.

**2.        Term of License**

This Agreement shall be for an initial term of five (5) year, commencing on the date of execution by both parties, which shall be considered the  Effective Date of this Agreement, and shall automatically renew thereafter for additional terms of one (1) year each unless  terminated by either party by giving notice of termination to the other party no later than ninety (90) days prior to the end  of the initial or any renewal term.  If such notice is given, the agreement shall terminate on the last day of the term in  which notice is given.

**3.        Grant of License**

PRO hereby grants to Licensee for the term of this Agreement a non-exclusive license to perform publicly, or cause the  public performance, on Licensee's business location, of non-dramatic musical compositions now or hereafter during the term  hereof in the repertory of PRO, and of which PRO shall have the right to license such performing rights.  Such  performances shall include performances presented under the auspices of Licensee, including, but not limited to,  performances by faculty, staff, or other business associates of Licensee while performing under the auspices of Licensee and shall  include performances by means of Internet Transmissions, including webcasts of Licensee owned and operated Radio  Stations, Intranet Transmissions and Licensee's Cable Television System.

**4.        Limitations on License**

(a)        This license is not assignable or transferable by operation of law or otherwise, and is limited to the Licensee and  to the business location.
(b)        This license does not authorize the broadcasting, telecasting or transmission by wire or otherwise, of renditions of  musical compositions in PRO's repertory to persons outside of the business location, other than by means of (i) music-on-hold  telephone systems operated by Licensee at the business location; (ii) Licensee's Internet Site or Service; (iii) Licensee's Intranet  transmissions; and (iv) Licensee's Cable Television System.
(c)        This license does not authorize performances at any musical attraction that is co-sponsored, co-promoted or co-  presented by Licensee and any other entity engaged in the business, whether for-profit or not-for-profit, of promoting or  presenting musical attractions.
(d)        This license does not authorize any performance by means of a coin-operated phonorecord player (jukebox)  otherwise covered by the compulsory license provisions of 17 U.S.C. Paragraph 116.
(e)        This license is limited to non-dramatic performances, and does not authorize any dramatic performances.  For  purposes of this Agreement, a dramatic performance shall include, but not be limited to, the following:

(i)           performance of a "dramatico-musical work" (as hereinafter defined) in its entirety;

(ii)          performance of one or more musical compositions from a "dramatico-musical work" (as hereinafter   defined) accompanied by dialogue, pantomime, dance, stage action, or visual representation of the work   from which the music is taken;

(iii)         performance of one or more musical compositions as part of a story or plot, whether accompanied or   unaccompanied by dialogue, pantomime, dance, stage action or visual representation;

(iv)         performance of a concert version of a "dramatico-musical work" (as hereinafter defined).

The term "dramatico-musical work" as used in this Agreement shall include, but not be limited to, a musical comedy,  opera, play with music, revue or ballet.

(f)          PRO reserves the right at any time to restrict the performance of any composition in its   repertory and further reserves the right at any time to withdraw from its repertory and from operation of this license, any   musical work as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in PRO's repertory, or on a claim that PRO does not have the right to license the   performing rights in such composition.

(g)         Nothing in this Agreement grants to Licensee, or authorizes Licensee to grant to any User or to anyone else, any   right to reproduce, copy or distribute by any means, method or process whatsoever, any of the musical compositions   licensed by this Agreement, including but not limited to, transferring or downloading any such musical compositions to a   computer hard drive or otherwise copying the composition onto any other storage medium.

(h)         Nothing in this Agreement grants to Licensee, or authorizes Licensee to grant to anyone else, any right to   reproduce, copy, distribute or perform publicly by any means, method or process whatsoever, any sound recording  embodying any of the musical compositions licensed under this Agreement.

**5.        License Fees, Reports and Payments**

(a)         In consideration of the license granted herein, for the following periods, Licensee agrees to pay PRO a Base or   Minimum License Fee, and Per Usage Fee.

(i)                  The Base License Fee shall be the following:

| Minimum and Base License Fee | Number of Business Locations |
|---|---|
| $50.00 per month for per each business location payable on the first of each Month.<br>This shall increase on a yearly basis every January 1st at 2.5% annually. | 256  (Licensee to fill out)<br>For each business location in addition to<br>The principal office listed above, please fill out a separate form including the address of the additional locations |

(ii)                The Per Usage Fee shall be based on the number of uses of Musical Works in PROs Repertory at $0.00005 USD per usage for every 1% of a work registered with PRO representing a total of 100% publisher and 100% writer share for a maximum of 200%. This shall increase on a yearly basis every January 1st at 2.5% annually, rounded highest to the nearest $0.01.

Rate Chart Example*:

| Ownership of PRO Work | Usages | Total Usage Fee | Base License Fee Per Business Location | Total Per Month |
|---|---|---|---|---|
| 1% Ownership of Publisher and Writer share | 10 | $0.01 | $50.00 | $50.01 |
| 1% Ownership of Publisher and Writer share | 10,000 | $1.00 | $50.00 | $51.00 |
| 1% Ownership of Publisher and Writer share | 1,000,000 | $100.00 | $50.00 | $150.00 |

| Ownership of PRO Work | Usages | Total Usage Fee | Base License Fee Per Business Location | Total Per Month |
|---|---|---|---|---|
| 50% Ownership of Publisher and Writer share | 10 | $0.05 | $50.00 | $50.05 |
| 50% Ownership of Publisher and Writer share | 10,000 | $50.00 | $50.00 | $100.00 |
| 50% Ownership of Publisher and Writer share | 1,000,000 | $5,000.00 | $50.00 | $5,050.00 |

| Ownership of PRO Work | Usages | Total Usage Fee | Base License Fee Per Business Location | Total Per Month |
|---|---|---|---|---|
| 100% Ownership of Publisher and Writer share | 10 | $0.10 | $50.00 | $50.10 |
| 100% Ownership of Publisher and Writer share | 10,000 | $100.00 | $50.00 | $150.00 |
| 100% Ownership of Publisher and Writer share | 1,000,000 | $10,000.00 | $50.00 | $10,050.00 |

| Ownership of PRO Work | Usages | Total Usage Fee | Base License Fee Per Business Location With Five Locations | Total Per Month |
|---|---|---|---|---|
| 100% Ownership of Publisher and Writer share | 10 | $0.10 | $250.00 | $250.10 |
| 100% Ownership of Publisher and Writer share | 10,000 | $100.00 | $250.00 | $350.00 |

| 100% Ownership of Publisher and Writer share | 1,000,000 | $10,000.00 | $250.00 | $10,250.00 |

*These are examples for illustration purposes only. Exact ownership, and usage may fluctuate.

(iii)        On the first of each month the Licensee shall submit a Musical Work Usage Report detailing the usage of each Musical Work in PRO's Repertory. Said reports shall be made through PROs website www.promusicrights.com, in the format required by PRO. In the event that Licensee cannot locate the correct format required to submit the Musical Work Usage Report, Licensee shall contact PRO at Licensing@ProMusicRights.com and request additional information.

(iv)        The Musical Work Usage Report shall contain the amount of usage and/or streams of which the Licensee utilized PROs Musical Works contained in its Repertory. PRO, upon receiving such submission will send out an invoice, to Licensee, for the Usage Fee amount due. Said invoice is due upon receipt. In the event that Licensee submits the Musical Work Usage Report later than five days after the reports are due, PRO will charge Licensee a daily fee equal to 10% of the Base Licensing Fee until Licensee comes into compliance and submits the Musical Work Usage Report.

(b)        Licensee agrees to report to PRO, on forms supplied free of charge by PRO, simultaneously with payment  of said license fees, Licensees' total full-time student enrollment.

(c)        In the event Licensee shall fail to pay license fees due hereunder within 30 days of the commencement or renewal of this agreement of the year in which they are due,  Licensee agrees to pay a finance charge on the license fees due of 1½ % per month, or the maximum rate permitted by the  law of the state in which Licensee is located, whichever is less, from the date such license fees became due.

(d)    .    Licensee agrees to furnish quarterly to PRO copies of all programs of musical works performed by Licensee in   each of its musical attractions presented during the previous quarter, which are prepared for distribution to the audience or

for the use or information of Licensee or any department thereof, and program schedules for Licensee's Cable Television  System. Copies of programs of Licensee's musical attractions shall include all encores to the extent possible. Licensee   shall be under no obligation to furnish such programs when they have not been otherwise prepared.

(e)  In the event that PRO requires the utilization of third parties, for instance, to process payments, process data or collections, Licensee agrees to pay said third party expenses.  In addition, if PRO decides to implement and utilize tracking usage technology, Licensee agrees to be responsible for all fees or costs association, including hardware, software, or additional third party fees.

(v) You agree to provide payment information, which can be electronic bank account information, credit card, debit card, etc., to PRO, and you expressly authorize PRO to charge and/or take payment from the provided payment information in accordance with this agreement, which includes both the monthly base licensing fee and per usage fee pursuant to invoice. Payment processing fees may apply and are authorized to be charged.

**6.        Reservation of Rights**

The parties hereto expressly reserve all rights and privileges accorded by the Copyright Act of 1976, as amended, and   other applicable laws.

**7.        Breach or Default**

Upon any breach or default of the terms and conditions of this Agreement, PRO may terminate this Agreement by   giving Licensee thirty (30) days notice in writing to cure such breach or default, and in the event such breach or default   has not been cured within said thirty (30) days, this Agreement shall terminate on the expiration of such thirty (30)-day   period without further notice from PRO. The right to terminate shall be in addition to any and all other remedies   which PRO may have. In this event of such termination, PRO shall refund to Licensee any unearned license fees   paid in advance.

**8.        Interference in PRO's Operations**

In the event of:

(a)        Any major interference with the operation of PRO in the state, territory, dependency, possession or political   subdivision in which Licensee is located, by reason of any law of such state, territory, dependency, possession or political   subdivision which is applicable to the licensing of performing rights; or

(b)        Any substantial increase in the cost to PRO of operating in such state, territory, dependency, possession or   political subdivision, by reason of any law of such state, territory, dependency, possession or political subdivision which   is applicable to the licensing of performing rights

PRO shall have the right to terminate this Agreement forthwith by written notice, and, in the event of such termination,   shall refund to Licensee any unearned license fees paid in advance. The written notice provided by PRO shall explain   the specific reason why it is terminating the license.

**9.        Notices**

All notices shall be given in writing by United States certified mail sent to either party at the address stated above.   Notices to PRO shall be made to the attention of: Director, Symphonic and Educational Licensing. Notices to   Licensee shall be made to the attention of  Joshua Robinson (Licensee Representative). Each party agrees to inform the other of any   change of address.

**10.        Modification of Agreement**

This Agreement constitutes the entire understanding between the parties with respect to the subject matter hereof.  This   Agreement cannot be waived or added to or modified orally, and no waiver, addition or modification shall be valid unless   in writing and signed by the parties.  Licensee recognizes that PRO must license all similarly situated users on a   nondiscriminatory basis.  Licensee agrees that any modifications to this Agreement by PRO, which are required by   local, state or federal law, shall not constitute discrimination between similarly situated  users. Examples of such modifications are statements of equal employment opportunity or nondiscrimination on the basis   of race, creed, color, sex or national origin.

**11.        Execution**

This Agreement may be signed in multiple counterparts, each of which shall be deemed an original and all of which taken   together shall constitute one and the same agreement.  Facsimile signatures shall be treated as original signatures for all   purposes hereunder.

IN WITNESS WHEREOF, this Agreement has been executed in duplicate original by the duly authorized representatives   of PRO and Licensee all as of the Effective Date.

## DISCLOSURE STATEMENT

This is notice that, in compliance with state music licensing statutes, PRO MUSIC RIGHTS, LLC ("PMR") is required to provide you with the   following information, in writing, at least seventy-two (72) hours prior to the execution of any contract requiring you to pay license   fees to PMR.

12.   The performing rights license agreement you have been offered by PMR contains a schedule of the rates and terms of license   fees under the contract, and upon your request amounts and terms of any discounts offered to proprietors of comparable   businesses in your area. Be advised that the rates and terms of PMR's performance rights license are contained within the   body of the license and the fee schedule attached thereto and made a part thereof.

13.   PMR has a toll-free telephone number 833-227-7683, from which you may obtain answers to inquiries concerning PMR's repertory.

14.   You may obtain, upon written request, and at your sole expense, the most current available list of PMR affiliated writers and   publishers and/or those copyrighted musical works in PMR's repertory.
  - PMR's repertory and list of affiliates may also be accessed and/or downloaded free of charge at www.promusicrights.com.
  - PMR's electronic address is support@promusicrights.com Any request for the most current list of PMR's repertory   or affiliates should be addressed to Pro Music Rights LLC, 3811 Airport Pulling Rd. Ste. 203, Naples, Florida 34105; Attention: Licensing   Department. If you request a printed copy, you will be charged the actual cost of the copy which will be communicated to   you in advance.

15.   PMR complies with all federal law and orders of courts having appropriate jurisdiction regarding the rates and terms of   license fees and the circumstances under which licenses for rights for public performances are offered to any proprietor.

16.   This is notice that you are entitled to the information as provided herein, and that failure of PMR to provide this information   is unlawful and you may be entitled to bring an action against PMR or assert a counterclaim in an action brought by PMR.

## STATE SPECIFIC DISCLOSURES

(l)   Alaska (AS § 45.45.500): The most current list of PMR's affiliates and the works in PMR's repertory is additionally   available through the Cabaret Hotel and Restaurant Retail Association.

(m)   Arkansas (Ark. Code § 4-76-103): See Disclosure Statement.

(n)   California (CA Bus. & Prof. Code § 21750): See Disclosure Statement.

(o)   Colorado (C.R.S. § 6-13-102 et seq):
  - PMR shall publish and file with the secretary of state its form contracts and a schedule of fees it charges a proprietor to   license music for public performance. A link to the schedule shall be filed with the secretary of state, who publishes the   link.
  - Upon request from the secretary of state, PMR shall provide information concerning a proprietor's rights and duties for   public performances. The secretary of state must post the information on the secretary's website.
  - PMR shall publish a catalog of musical works the society licenses. A link to the catalog shall be filed with the secretary   of state, who publishes the link.
  - You should consider obtaining a separate license or other form of authorization from those performing rights societies or   copyright owners whose copyrighted musical works are not licensed pursuant to PMR's performance rights contract.

(p)   Florida (FL. Stat. § 501.93):
  - A copy of each form of contract or agreement offered by PMR to a proprietor in this state shall be made available upon   request of any proprietor.
  - You should consider obtaining a separate license or other form of authorization from those performing rights societies or
                  copyright owners whose copyrighted musical works are not licensed pursuant to PMR's performance rights contract.

(q)   Idaho (ID Code § 48-1303): See Disclosure Statement.

(r)   Illinois (815 ILCS 637/10): See Disclosure Statement.

(s)   Indiana (IC 32-37-3): See Disclosure Statement.

(t)   Iowa (IA Code § 549.3): See Disclosure Statement.

(i)   Kansas (KS Stat. § 57-222): See Disclosure Statement.

(j)   Maryland (MD Comm. L. Code § 11-1402): See Disclosure Statement.

(k)   Michigan (MI Comp. L. § 445.2104):
  (i)   Upon request, a schedule of the rates and terms of license fees under contracts offered to proprietors of comparable   businesses in Michigan within the past 12 months can be made available.
  (ii)   There are exemptions that may exclude you from liability under the copyright laws. The United States Copyright Act is   set forth at 17 U.S.C. §§ 101 et. seq. Exemptions under that Act are set forth at 17 U.S.C. §§105 - 110. Please contact your   attorney for advice as to the applicability of any exemptions to your premises.

(l)   Minnesota (MN Stat. § 325E.51): See Disclosure Statement.

(m)   Missouri (MO Rev. Stat. § 436.155): PMR shall file a printed listing of works licensed by PMR with the attorney general,   and provide or make available, upon request, a listing on suitable electronic media to bona fide trade associations representing   groups of proprietors. A list shall be provided to the proprietor by electronic or other means, solely at the proprietor's expense.

(n) Nebraska (NB Rev. Stat. § 59-1403.02(1)(b)): An electronic copy of each form of contract or agreement offered by PMR   to any proprietor in this state shall be made available upon request of any proprietor.

(o) New Jersey (NJ Rev. Stat. § 56:3A-3):
    (i)    PMR shall make available in electronic form on the largest nonproprietary cooperative public computer network a   current list of not less than the titles of the performed copyrighted musical works for which PMR collects license fees   on behalf of copyright owners and shall update the list at least weekly and shall provide the electronic address to the   Secretary of State.
    (ii)    Upon request, any person may view the list in electronic form through the Office of the Secretary of State.

(p) New York (NY Arts & Cult. Aff. L. § 31.04): See Disclosure Statement.

(q) North Dakota (ND Cent. Code § 47-21.2-02): See Disclosure Statement.

(r) Oklahoma (15 OK Stat. § 15-790): PMR shall give annual notice, in a form prescribed by the Attorney General, that the   proprietor is entitled to a schedule or the rates and terms of license fees under the contract.

(s) Oregon (OR Rev. Stat. § 647.700): See Disclosure Statement.

(t) Texas (TX OCC § 2102.0003): See Disclosure Statement.

(u) Utah (UT Code § 13-10a-4): See Disclosure Statement.

(v) Virginia (VA Code § 59.1-461): PMR shall file with the State Corporation Commission a certified copy of each form of   document that is used by PMR to enter into a contract with a proprietor doing business in the state and that PMR will   make available, upon your written request, at your sole expense, copies of such documents as are filed with the department.

(w) Washington (WA Rev. Code § 19.370.070): See Disclosure Statement.

(x) West Virginia (WV Code § 47-2A-3): PMR shall, at least annually, provide notice of the license fee rate and the means of   its computation to proprietor. The notice shall be satisfied if the copyright owner or PMR publishes the required information   in a Class II-0 legal advertisement in a qualified newspaper published in this state with a bona fide circulation of forty thousand   or more, or if the copyright owner or PMR files copies of its license agreements containing the information required under   subsection (s) of this section with the secretary of state's office.

(y) Wisconsin (WI Stat. § 100.206):
    (i)    Upon written request, and at your sole expense, PMR shall make the most current list of affiliates and repertory filed   with the Wisconsin Department of Agriculture, Trade, and Consumer Protection available.
    (ii)    PMR shall file with the Wisconsin Department of Agriculture, Trade and Consumer Protection a certified copy of each   form of document that is used by PMR to enter into a contract with a proprietor doing business in the state and that   PMR shall make available, upon your written request, at your sole expense. copies of such documents as are filed with   the department.

(z) Wyoming (WY Stat. § 40-13-302): See Disclosure Statement.


PRO MUSIC RIGHTS, LLC
By

LICENSEE

Meijer

By Joshua Robinson

TITLE Team Leader

(Fill in capacity in which signed:  (a)  If corporation, state corporate office held;  (b)  If  partnership, write word "partner" under signature of signing partner;  (c) If individual   owner, write "individual owner" under signature.)

IP 65.49.255.10

## Exhibit B

**PRO**          My account    Artist/Rights Holder Sign-up    Music License Sign up    G Select Language | ▼

---

# MUSIC LICENSE FOR BUSINESS – MUSIC USERS SIGN UP

---



**COMPANY NAME**                                    **YOUR LEGAL NAME**

**TITLE AT COMPANY**                                **ADDRESS**

**PHONE**                                           **EMAIL**
|

**PASSWORD**                                        **CONFIRM PASSWORD**

☐ I'm not a robot          reCAPTCHA
                           Privacy - Terms

[ CERTIFY & SUBMIT ]

PRO          My account    Artist/Rights Holder Sign-up    Music License Sign up    G Select Language | ▼



Does Your company have any subsidiaries and/or franchises? If yes, how many subsidiaries and/or franchises does your company have?    0

Do your company and its subsidiaries or franchises have any of the following locations? This list is not exhaustive: general business locations, restaurants, bars and nightclubs, retail stores, adult entertainment businesses, bowling centers, campgrounds/RV parks, churches, colleges/universities/schools, conventions, meetings/trade shows, dance schools, fitness facilities, endurance events, concerts, hotels/motels, ice skating rinks, indoor playgrounds, local governments/municipalities, private clubs, roller rinks, shopping centers, wineries, factories, warehouses, office-buildings, dorms, special events venues, airports, cruise ships, trains, airplanes, cable stations, television stations, doctor offices, hospitals, banks, radio stations, or any other types of location or service. If yes, how many?    0

Does your company/subsidiaries/franchises have any websites? If yes, how many websites does your company/subsidiaries/franchises have?    0

Does your company/subsidiaries/franchises have any phone, computer, tablet, or Smart TV applications? If yes:

How many applications does your company/subsidiaries/franchises have on Google Play?    0

How many applications does your company/subsidiaries/franchises have on Apple's App Store?    0

How many applications does your company/subsidiaries/franchises have on Aptoide?    0

How many applications does your company/subsidiaries/franchises have on Amazon Appstore?    0

How many applications does your company/subsidiaries/franchises have on Getjar?    0

How many applications does your company/subsidiaries/franchises have on F-Droid?    0

How many applications does your company/subsidiaries/franchises have on Galaxy Store?    0

How many applications does your company/subsidiaries/franchises have on AppLand?   0

How many applications does your company/subsidiaries/franchises have on Opera Mobile Store?   0

How many applications does your company/subsidiaries/franchises have on Cydia?   0

How many applications does your company/subsidiaries/franchises have on Baidu?   0

How many applications does your company/subsidiaries/franchises have on Kongregate?   0

How many applications does your company/subsidiaries/franchises have on PP Mobile Assistant?   0

How many applications does your company/subsidiaries/franchises have on Roku?   0

How many applications does your company/subsidiaries/franchises have on other app store?   0

**Next Step**



My account    Artist/Rights Holder Sign-up    Music License Sign up    G Select Language | ▼

# MUSIC USERS – AGREEMENT

## BILLING INFORMATION

NAME ON THE CARD

CARD NUMBER                                EXP. MONTH

EXP. YEAR                                   CVC

## ADDRESS

ADDRESS LINE 1                              ADDRESS LINE 2

CITY                                        STATE

ZIP                                         COUNTRY
                                            United States                    ∨

## AGREEMENT

BUSINESS LICENSE AGREEMENT

Agreement made and entered into this 02 of October, 2020    (the "Effective Date"), by and between the PRO MUSIC RIGHTS, LLC, with its principal offices located
at 3811 Airport Pulling Rd. Ste. 203, Naples, Florida 34105, hereinafter referred to as "PRO", and

☐ **By Checking Here You represent that you have read and understood, and that you agree to be bound by, this agreement and & you are at least 18 years old. INDICATE THAT YOU HAVE READ THE INFORMATION YOU ARE NOW PROVIDING TO PMR AND THAT, UNDER THE PENALTIES OF PERJURY, THE FACTS CONTAINED AND STATED IN IT ARE TRUE.**

☐ Check here to indicate that you have read and agree to the terms of the Pro Music Rights Business License Agreement and that the electronic signatures appearing on this agreement are the same as handwritten signatures for the purposes of validity, enforceability and admissibility.
**Licensee understands they are taking a license pursuant to the above contract of at least Fifty dollars per location, plus taxes, processing fees and yearly increases, which will be assessed each month and automatically charged. This contract has a minimum of five business locations. In the event that you wish to obtain a licensing agreement with less business locations, please contact licensing@promusicrights.com to assist you with this and do not continue further.**

Create new account